CLEVELAND (CITY) V. C. N. GRIFFEN ET AL.

EQUITY MAY CORRECT MISTAKES IN ESTIMATES OF CIVIL ENGINEER, WHEN.

A court of equity has power to correct mistakes in the estimates of a civil engineer, notwithstanding the contract under which the work was being done provided that the estimates should be final and conclusive. But as a general rule, in the absence of an intention to defraud, or bad faith on the part of the engineer, his estimates under such a contract are final.

ERROR to Cuyahoga common pleas court.

N. D. Baker, C. J. Estep, H. F. Payer, G. S. Adams and N. J. Carey, for plaintiff in error.

Albert Lawrence and Brady & Cashman, for defendant in error:

Where, by the terms of a contract, the estimates of an engineer are to be conclusive, a court of equity will correct his mistakes. *Mansfield & S. Ry.* v. *Veeder,* 17 Ohio 385; *Balt. & O. Ry.* v. *Stankard,* 56 Ohio St. 224 [46 N. E. Rep. 577; 49 L. R. A. 381; 60 Am. St. Rep. 745]; *Easton* v. *Canal Co.* 13 Ohio 79; *Mundy* v. *Railway,* 67 Fed. Rep. 633 [14 C. C. A. 583; 31 U. S. App. 606]; *Kane* v. *Stone Co.* 39 Ohio St. 1; *North Lebanon Ry.* v. *Grann,* 33 Pa. St. 530 [75 Am. Dec. 624]; *Faunce* v. *Burke,* 16 Pa. St. 469 [55 Am. Dec. 519]; *Hamilton* v. *Insurance Co.* 136 U. S. 242 [10 Sup. Ct. Rep. 945; 34 L. Ed. 419].

Parties cannot by contract take away the jurisdiction of the courts in such cases, and that the attempt to do so is void. *Balt. & O. Ry.* v. *Stankard, supra; Supreme Council of Order of Chosen Friends* v. *Forsinger,* 125 Ind. 52 [25 N. E. Rep. 129; 9 L. R. A. 501; 21 Am. St. Rep. 196]; *Whitney* v. *Accident Assn.* 52 Minn. 378 [54 N. W. Rep. 184]; *Home Ins. Co.* v. *Morse,* 87 U. S. (20 Wall.) 445 [22 L. Ed. 365]; *Stephenson* v. *Insurance Co.* 54 Maine 55; *Mentz* v. *Insurance Co.* 79 Pa. St. 478 [21 Am. Rep. 80]; *Reed* v. *Insurance Co.* 138 Mass. 572; *Hamilton* v. *Insurance Co.* 136 U. S. 242 [10 Sup. Ct. Rep. 945; 34 L. Ed. 419]; *Guaranty Tr. & Safe Dep. Co.* v. *Railway,* 139 U. S. 137 [11 Sup. Ct. Rep. 512; 35 L. Ed. 116].

MARVIN, J.

The plaintiff in error was the defendant below. The defendants in error were plaintiffs below. The terms plaintiff and defendant as used in this opinion refer to the parties as they stood in the original case.

The plaintiffs are parties doing business under the firm name of Griffin, Norton & Co.

The defendant is a municipal corporation organized under the laws of Ohio.

On July 12, 1899, the plaintiff, C. N. Griffin, and the defendant, the latter acting by and through its proper officers and proceeding in all respects according to law for that purpose, entered into a contract in writing under which the said Griffin was to construct a masonry arch at Edgewater park in said city. By the terms of said contract the said Griffin was to do all the work and furnish all the machinery, tools and materials, and do everything requisite to the complete construction of said arch, in the manner and under the conditions specified in the contract and in accordance with plans and directions made and to be made from time to time by the defendant, and the said Griffin was to receive therefor from the defendant different prices for the different parts of the work, such various prices being specified in the contract.

Among the prices so specified are the following:

"3. For all stone masonry in the work, except the arch masonry, including the furnishing of all materials, tools and labor, the sum of $7.50 per cubic yard.

"4. For all arch masonry in the work, including the furnishing of all materials, tools and labor, forms and centers, the sum of $11.50 per cubic yard."

The said Griffin assigned to the plaintiffs all his rights under this contract.

The work was fully completed. Payments were made by the defendant from time to time, upon estimates furnished by the engineer acting for the city.

On October 26, 1901, the proper engineer furnished a final estimate for the work done and materials furnished in the construction of said arch.

Said estimate fixed the amount of stone masonry in said arch at 3,734.76 cubic yards, and the amount of arch masonry at 644.46 cubic yards. As to these estimates the plaintiffs complain that, though the aggregate amount of masonry is properly given, the division between the two classes is wrong.

Other items in this final estimate were complained of by the plaintiffs, but no claim is here made that the judgment of the court below as to such items was erroneous.

The petition prayed for a correction of the so-called final estimate of the engineer, that an accounting might be had upon such corrected

Cleveland v. Griffen.

estimate, and that plaintiffs have judgment for the amount found due them upon such accounting.

The result in the court of common pleas was a finding that 939 cubic yards classified in the estimate as stone masonry should have been classified as arch masonry, thus increasing the amount of arch masonry to 1,583 cubic yards and reducing the amount of stone masonry to 2,795.76 cubic yards, an accounting then being taken and fixing the amount due plaintiffs upon such amended estimate.

As the price of arch masonry was fixed in the contract at $11.50 per cubic yard while stone masonry was fixed at $7.50, the court therefore added to the engineer's estimate on this item $4 per yard on 939 yards, and the only question before this court is whether the court erred in making this addition.

One of the items in the contract hereinbefore mentioned reads:

"8.   To prevent all disputes and litigation, it is further agreed by and between the parties to this contract that the engineer shall be referee, in all cases, to decide upon the amount, quality, acceptableness and fitness of the several kinds of work and materials which are to be paid for under this contract, and upon all questions which may arise, relative to the fulfillment of the contract on the part of the contractor, and his estimates shall be final and conclusive, and such estimate and decision, in case any question shall arise, shall be a condition precedent to the right of said contractor to receive any money under this agreement."

A further provision of the contract, under the heading "general requirements," is as follows:

"It is further mutually agreed that whenever, in the opinion of the engineer, the said contractor shall have completely performed this contract, the said engineer shall proceed, with all reasonable diligence to measure up the work, and shall make out the final estimate for the same," etc.

It was in pursuance of this clause of the agreement that the estimate herein first mentioned was made out.

On the part of the defendant (plaintiff in error), it is urged that under this contract plaintiffs were absolutely bound by the final estimate of the engineer, no claim being made that there was any purpose or intention on his part to defraud the plaintiffs, or that he acted in bad faith in making his estimates.   Authorities are cited in support of this contention.   Among them is the case of *Martinsburg & P. Ry. v. March*, 114 U. S. 549 [5 Sup. Ct. Rep. 1035; 29 L. Ed. 255].   The provisions of the contract in that case are substantially as the one under consideration here.   In that case there was no allegation in the

bill that the engineer had made the final estimate provided for, but the court say, on page 553:

"Upon the supposition that the engineer made such a certificate as that provided by the contract, there is no allegation that entitled the plaintiff to go behind it; for, there is no averment that the engineer had been guilty of fraud, or had made such gross mistake in his estimates as necessarily implied bad faith; or had failed to exercise an honest judgment in discharging the duty imposed upon him. The first count of the declaration was, therefore, defective for the want of proper averments showing plaintiff's right to sue on the contract, and the demurrer to that count should have been sustained."

From this case and the cases cited in its support, it seems clear that if the rule there laid down is to be applied to the present case, the plaintiffs must fail and the judgment of the court of common pleas must be reversed on that ground, but our own Supreme Court seem to have modified this rule somewhat.

In the case of *Balt. & O. Ry.* v. *Stankard*, 56 Ohio St. 224 [46 N. E. Rep. 577; 49 L. R. A. 381; 60 Am. St. Rep. 745], suit was brought by the parents of Michael Stankard who, having been an employe of the railroad company, died, and the claim was made that he was such employe at the time of his death. Suit was to recover for death benefits provided under certain regulations of the company. The claim was presented to the superintendent of the relief department, who did not allow it but referred it to the advisory committee, who rejected it because of his failure to report in accordance with the regulations. On the part of the company it was urged that the suit was barred under rule 11 of the relief department, which reads, page 229:

" 'All claims of members of the relief feature, their beneficiaries or other representatives * * * arising under these regulations, and all questions or controversies of whatsoever character arising in any manner, or between any parties, or persons, in connection with the relief department or the operation thereof, whether as to the construction of language or meaning of the regulations, or as to any writing, decision, instruction or acts in connection therewith, shall be submitted to the determination of the superintendent of the relief department, whose decisions shall be final and conclusive thereof, subject to the right of appeal in writing to the committee * * * within thirty days after notice to the parties interested in the decision.

" 'When an appeal is taken to the committee, it shall be heard by them without further notice at their next stated meeting * * * and

Cleveland v. Griffen.

the decision arrived at thereon by the committee shall be final and conclusive upon all parties, without exception or appeal.' "

As to this the court say:

"The reference of the claim to the advisory committee  *  *  *, was the equivalent, and took the place of an appeal."

On page 231 of the opinion, this language is used:

"A long line of decisions hold that parties cannot by contract take away the jurisdiction of the courts in such cases, and that the attempt to do so is void." (Citing several cases.)

Again, the court say, page 233:

"Such contracts are in their nature only applicable to cases wherein it becomes necessary to fix some facts, leaving the question of law to be settled by the courts upon proper proceedings. The ultimate question to be determined—the liability or nonliability of the parties—must be left to the courts. The construction of a written contract is a question of law for the court, and a provision in the contract that the construction of such contract, or the meaning of rules or regulations, shall be finally determined by some designated person, is void, because the court cannot be robbed of its jurisdiction to finally determine such questions.

"In insurance and other like cases, where the ultimate question is the payment of a certain sum of money, certain facts may be fixed by a person selected for that purpose in the contract, but the ultimate question as to whether the money shall be paid or not, may be litigated in the courts, and a stipulation to the contrary is void. The fixing of the particular fact by the person or persons named in the contract, and in the manner therein provided, is usually a condition precedent to the bringing of an action on the contract, and the performance of such condition should be averred in the petition, or some good excuse given for its non-performance.  *  *  *

"In the case at bar, the claim having gone through the course provided by rule 11, and having been rejected, the parents had the right to go into a court of justice and establish their claim; and in the trial, the fact that the claim had been so rejected was not a bar to a recovery. In so far as rule 11 attempts to cut off the right of action in court, it is null and void."

The syllabus in this case, page 244, reads:

"One of the rules in the relief department of a railroad company, provided that all claims of beneficiaries should be submitted to the determination of the superintendent, whose decision should be final and conclusive, unless appealed to the advisory committee, and in case of such appeal, the decision of the committee, should be final and conclusive upon

all parties without exception or appeal: *Held,* that after the rejection of a valid claim by the advisory committee, the beneficiary could maintain an action in the court for the recovery of the money due thereon, and that such rule is not a bar to the action."

The case of *Mansfield & S. C. Ry.* v. *Veeder,* 17 Ohio 385, is, as we think, much like the case at bar, and there the court held that:

"When, by the terms of the contract between a railroad company and a contractor, the estimates of the engineer are to be binding upon the parties, a court of chancery has power to correct the mistake of the engineer.  *  *  *

"In construing a contract  *  *  *  the court will use the terms employed by the parties according to their popular signification, if to apply them according to technical or scientific rules would defeat the manifest intention of the parties.

"Words of doubtful meaning will be so construed as to carry out the apparent intention of the parties."

If, then, in the estimate of the engineer he was clearly mistaken in his estimate, the court below committed no error in correcting such mistake.

A part of the contract was the specification and plans submitted to the contractor on which he made his bid. The structure contracted for was a bridge supporting the tracks of the L. S. & M. S. Ry. over a public driveway called Edgewater boulevard. The top of this was, of course, to be level, and there was to be an archway under this bridge of such dimensions as to provide for a broad carriage or driveway. The plans show that the greater part of the masonry was to be of stone, but the archway, from a point about——feet above the earth on either side, and extending from side to side was to be of brick, faced at the ends with stone, using the word "ends" as meaning that part facing one as he approached the arch on the driveway from either direction. At the ends the arch on either side of the driveway, using the word, "ends," as meaning that part of the arch nearest the ground, was to be stone masonry, the stones so cut as to continue the curved line of the brick arch for several feet. Further down toward the earth inside of such curved line of the stone, however, to be stone masonry, the stones cut with the upper and the lower sides parallel, and laid up against the curved line, formed of stone, already mentioned, the lines of these stones next the driveway being perpendicular to the surface of the earth.

From this somewhat imperfect description it will be seen that a part of the masonry laid in arch form was to be of brick and a part of stone; that some of the stone masonry so to be laid was to be the facing

Cleveland v. Griffen.

of the brick work, and a part was to be that which supported the brick arch, at its lower ends. The engineer allowed as arch masonry all the brick work of the arch and so much of the stone work as constituted the facing of the brick work at outer ends. The correction made by the trial court allowed all the stone work which was laid in arch form with the curved line, as already mentioned, as arch masonry.

The only contention between the parties here is as to which was right in this allowance.

Nothing was allowed by the trial court as arch masonry which was not laid with the curved line for its inner or under surface.

It will be noticed that the contract recognizes that a part of the stone masonry shall be arch masonry, because the third item of prices reads:

"For all stone masonry in the work, except the arch masonry * * * the sum of $7.50 per cubic yard."

And the fourth item reads:

"For all arch masonry $11.50 per cubic yard."

It is clear, then, that whatever arch masonry was to be laid, whether of brick or stone, was to be paid for at the higher rate.

On the part of the city, however, it is urged that taking the entire contract and considering the use of the terms, "arch masonry" and "stone masonry," as understood by builders and engineers in a contract like this, no part of the stone work, aside from the facing, should be estimated as arch masonry. As bearing upon this construction, atten tion is called to the estimates made by the engineers and submitted to the contractor before the contract was made of the probable amount of the several kinds of work to be done. These estimates show stone masonry 3,600 yards, and arch masonry 800 yards. These estimates were given as approximate only, but were given for contractors to have an ap proximate idea of the amount of work to be done, and for use as a comparison of the bids. It is noticeable that these approximations are much nearer to the amounts allowed by the engineer in his final estimate than to the amounts allowed by the court, the approximate estimate made in advance being:

      Arch masonry...................... 800      yards.
      Final estimate.................... 644.46  yards.
      Stone masonry.....................3,600      yards.
      Final estimate....................3,774.74 yards.

While the amount allowed by the court was:

      On the arch masonry..............1,583.46 yards.
      On the stone masonry.............2,795.70 yards.

Cuyahoga County.

These facts are somewhat significant and tend to show that these approximate estimates were based upon the same construction of the terms, "arch masonry" and "stone masonry," as given in the final estimate.

It is clear that "arch masonry" and "stone masonry" are not necessarily different things. "Stone masonry" may or may not be "arch masonry" and "arch masonry" may or may not be stone masonry. This is recognized in the third item of prices to be paid as hereinbefore quoted, viz.: "For all stone masonry in the work except arch masonry," etc. The contract provides that "the arch" except at the ends shall be of brick masonry, and the claim is made and the evidence tends to establish, that the "ends" of the arch are the faces seen by one approaching in either direction on the driveway which passes under the arch. It might be, however, that in ordinary language the words, "ends of the arch," might be used to designate that portion on either side of the driveway which comes nearest to the earth.

It is provided in the contract that the cement used in the arch masonry shall be of the best quality of Portland cement. The stone masonry was to be laid in American hydraulic cement, and it is urged that this language indicates that the terms, "arch masonry" and "stone masonry," are used in contradistinction in the contract.

It, in connection with other parts of the contract, we think clearly indicates that the contract was not carefully drawn, and that words were used sometimes with strict accuracy and sometimes with less regard to their technical meaning.

It is clear that the expense of putting in stone masonry in arch form was fully as great as putting in brick masonry in the same form and was so much greater than putting in stone masonry with vertical joints that it can hardly be supposed that in making this contract for a structure which was to contain nearly 50 per cent more of stone masonry laid in arch form than of brick arch masonry, and more than one-third as much stone masonry in this form as there was to be of stone masonry laid with vertical joints, the distinction in price of four dollars per yard was to be simply between the masonry laid in brick with a comparitively small amount of stone work for the facing of the brick and the entire body of the work other than this facing, which was to be done in stone.

We reach the conclusion, therefore, that there was no error in the judgment of the court of common pleas, and such judgment is affirmed.

Hale and Winch, JJ., concur.